IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

LORRI WATSON and CHARLES WATSON,
Individually and as Husband and Wife,

    Plaintiffs,

v.                                          No. 1:23-cv-01041-JDB-jay

UNITED STATES OF AMERICA,

    Defendant.

MEMORANDUM OPINION AND ORDER

I.      INTRODUCTION AND PROCEDURAL HISTORY

Plaintiffs, Lorri Watson and Charles Watson, initiated this action against the United States of America on March 9, 2023, asserting a claim of negligence pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671–2680. (Docket Entry ("D.E.") 1.) The suit arose from injuries sustained by Mrs. Watson during an automobile collision with Clayton Goldsmith, a Special Agent with the Federal Bureau of Investigation, on April 27, 2021. (*Id.*) On May 30, 2023, the United States filed an answer, alleging the comparative negligence of Watson. (D.E. 7.) The Court conducted a bench trial on March 3 and 4, 2025. (D.E. 53–54.) Upon careful consideration of the credible witness' testimony, exhibits offered at trial, transcripts of the proceedings, the proposed findings of fact and conclusions of law submitted by the parties, and the applicable law, the Court, in accordance with Rule 52(a)(1) of the Federal Rules of Civil Procedure,[1] makes the following findings of fact and conclusions of law.

---

[1] The rule provides in pertinent part that, "[i]n an action tried on the facts without a jury . . ., the court must find the facts specially and state its conclusions of law separately. The findings

II.     FINDINGS OF FACT

The collision occurred at approximately 11:15 a.m. on April 27, 2021, near the intersection of Bells Highway and Old Bells Loop/Spur in Jackson, Tennessee, on a dry, clear day. Prior to the collision, Goldsmith, driving a 2016 Dodge Charger, was traveling westbound on Old Bells Highway.[2] As he was driving, the agent either made or received a phone call from a friend, Robin Garabedian, and subsequently pulled into the parking lot of the Ceramic Tile Warehouse, which was located at the corner of Bells Highway and Old Bells Loop/Spur. While still on the phone call and using a hands free device, he exited the parking lot onto Old Bells Loop/Spur and halted at the stop sign. Because the sign was set back from the road, Goldsmith then pulled up to Bells Highway where he again stopped and looked in both directions before attempting to cross. To his left was the intersection of Old Bells Road and Bells Highway, consisting of a four-way stop. Goldsmith testified at trial that before he attempted to cross, he did not see any vehicles between himself and the four-way stop. (D.E. 57 at PageID 632.) He further recalled that just before the collision he saw a "blur" to his left. (*Id.* at PageID 633.)

Lorri Watson ("Plaintiff") was traveling eastbound on Bells Highway in a 2016 Honda Civic. The parties have stipulated that when Watson reached the four-way stop, she did not stop at the sign prior to the collision. Watson testified at trial that she "roll[ed] through" the stop sign but "wasn't going more than—around 45 [miles per hour]," the posted speed limit. (*Id.* at PageID 597.) As Watson neared the four-way stop, two other vehicles were approaching the intersection, one travelling northbound and the other going southbound. The driver of the northbound vehicle, Dan Long, testified at trial that he witnessed a silver car go "through the stop sign at a fairly good

---

and conclusions may be stated . . . in an opinion or memorandum of decision filed by the court. Fed. R. Civ. P. 52(a)(1).

[2] The parties stipulated that Goldsmith was acting within the scope of his employment with the Federal Bureau of Investigation at the time of the collision.

rate of speed." (D.E. 57 at PageID 676.) He estimated the speed of the car to be between 40 and 50 miles per hour. (*Id.*) Long further recalled that the southbound vehicle attempted to cross the intersection but then "stopped kind of abruptly" when the silver car failed to heed the stop sign. (*Id.*) Long opined that if the southbound car had proceeded through the four-way stop, there would have been a collision between it and the car operated by the Plaintiff. (*Id.* at PageID 677–78.)

Madison County Deputies Tony Stewart and Dennis Ifantis arrived at the scene within minutes of the collision. Deputy Stewart spoke with Goldsmith and Deputy Ifantis interviewed witnesses Dan Long, Velma Long, and Rhonda Laster. Ifantis testified at a deposition that, based on his years of training and experience, "[i]f Clayton Goldsmith had yielded the right-of-way, then an accident would have been avoided."[3] (D.E. 57 at PageID 537–38.)

Emergency Medical Services ("EMS") also came to the scene. EMS providers noted Watson's injuries included loss of consciousness, a left thigh laceration, a right knee deformity, and left ankle and right wrist deformity. The Plaintiff was air-lifted to Regional One Health in Memphis, Tennessee, where it was further determined that she had an aortic injury, multiple rib fractures and other serious conditions. She was placed in the ICU and received treatment for acute pain, a course of antibiotics, and multiple surgeries before she was discharged on May 20, 2021. After Watson began outpatient care on June 8, 2021, she had to use a wheelchair for a little more than a year and relied on her daughter, Savannah Liles, to aid in personal hygiene practices. The Plaintiff related at trial that she still must rely on a walker around her home and whenever she travels to a store. Liles related that her mother used antidepressants for anxiety and panic attacks. (*Id.* at PageID 566.) The parties stipulated that Watson's total medical charges were $752,531.18.

---

[3] Deputies Stewart and Ifantis were both unavailable for trial due to illness. Relevant portions of their depositions were thus read into the record by Plaintiffs' counsel, without objection from Defendant.

Watson's husband testified at trial that his wife's injuries affected their intimate relations. (D.E. 57 at PageID 580–81.) He also described the damage to his wife's Honda, estimating it was worth approximately $15,000 prior to the collision. (D.E. 57 at PageID 582.)

Plaintiffs called accident reconstructionist Ralph Aronberg as their expert witness. Aronberg testified that, in creating his initial report, he relied on the Tennessee Electronic Traffic Crash Report, photographs of the accident scene, photos of the damage to Plaintiff's Honda, Google satellite and street views of the crash site, depositions, court filings, and statistics for the 2016 Dodge Charger and 2016 Honda Civic. (D.E. 56 at PageID 298–99.) He first determined that the distance from the stop bar Plaintiff crossed at the intersection of Bells Highway and Old Bells Road to the area of collision was 335 feet. He then discovered that the damage to the front of Plaintiff's car extended from the left to the right side and that Goldsmith's vehicle also had damage "all the way across." (*Id.* at PageID 305, 313.) He further concluded that the accident could not be reconstructed, due to the damage to the agent's vehicle. The bumper bar of the Dodge was detached and thus disqualified it from "being able to be evaluated by a damage type analysis." (*Id.* at PageID 310.) Aronberg concluded that "when you measure damage to a vehicle for reconstruction purposes you utilize what are called stiffness coefficients that are developed from government crash tests. And all stiffnesses have to be measured to the bumper bar of the vehicle." (*Id.* at PageID 308.) Similarly, the lack of "very precise measurements," relating to the damage to the left rear tire of Watson's vehicle, prohibited a momentum analysis. (*Id.* at PageID 312–13.) Nevertheless, Aronberg determined "within a reasonable degree of engineering probability [that Watson's vehicle] was not exceeding the speed limit, which was 45 miles per hour" at the time of

4

the crash and opined that Goldsmith's vehicle was basically stopped at the point of collision.[4] (*Id.* at PageID 318; Tr. Ex. 2.) His initial report concluded that "the cause of this crash lies solely with the hazardous driving actions of Agent Goldsmith. Had Agent Goldsmith used reasonable caution in crossing Bells Highway, and not violated the law, there would have been no crash." (Tr. Ex. 2.)

The United States presented the testimony of accident reconstructionist James Norris. He noted that he similarly relied on the crash report, scene and property damage photographs of Plaintiff's and Goldsmith's vehicles, depositions, and court filings when creating his report. (D.E. 56 at PageID 387.) Additionally, he visited the site of the collision in August 2023. He located a gouge mark in the road, took photographs and measurements, flew a drone to obtain an overhead view of the area, and made videos of both vehicles' approaches. The expert stated in his report that based on these measurements—as well as the "geometric layout" of the area, information from Goldsmith's deposition, and observations made during his inspection of the collision site—he determined that Goldsmith's line-of-sight toward the west was approximately 319 feet from the area where he stopped before attempting his maneuver. (Trial Exhibit 8.) He ascertained that "[t]his line-of-sight would lead back to a portion of the intersection of Bells Highway and Old Bells Road." (*Id.*)

Norris testified that the gouge mark led him to the area of impact, specifically that "[s]omething from the bottom of one of the[] vehicles was pushed down as the vehicles were interacting and moving to the point of maximum engagement." (D.E. 56 at PageID 401.) Using photographs to scale the damage, Norris determined the impact configuration and principal

---

[4] Aronberg's conclusion regarding Goldsmith's speed was provided in his supplemental report and at trial but not in his initial report.

direction of force, estimated the crush damage to the vehicles, and performed a crush energy analysis. (*Id.* at PageID 402–04.) The expert stated in his report that to determine the impact speeds, his analysis considered "the damage to both vehicles, the kinetic energy dissipated during their collision, and the post-impact rotation/sliding of the vehicles. This analysis also considered impact angles, approach paths, and departure paths of the vehicles. This included crush damage/energy analysis, CRASH3 algorithm[5], Delta-V and post-impact analyses." (Tr. Ex. 8.) The results of the witness's analysis were that, at the time of impact, Goldsmith's vehicle was traveling in the range of 12 to 14 miles per hour and Watson's vehicle was moving in the range of 51 to 54 miles per hour, exceeding the posted speed limit. (*Id.*)

Finally, Norris developed time and distance opinions. For Goldsmith's vehicle, the witness testified that "covering the pre-impact travel distance from the beginning of the maneuver, being defined as when the foot goes to the gas up to the point of impact, we're looking at right around 3.8 seconds for the Dodge's maneuver." (D.E. 56 at PageID 442.) Had the impact not occurred, Goldsmith would have needed an additional 1.92 seconds to "finish clearing the intersection." (*Id.* at PageID 443.) For Plaintiff's vehicle, Norris determined that she was approximately 283 to 296 feet from the area of impact when Goldsmith began his maneuver. (*Id.* at PageID 444.) One second prior to that, which Norris stated would have been when Goldsmith "made his last glance[] or was moving his foot from the brake to the accelerator," Watson was in the range of 358 to 374 feet from the area of impact. (*Id.* at PageID 444–45.) The defense expert opined that had Watson stopped at the stop sign at the intersection of Bells Highway and Old Bells Road, the collision would not have occurred "[b]ecause the timing of that scenario would be completely different."

---

[5] Norris testified that this algorithm was one used by multiple sources which, to his understanding, included the CRASH3 Program, but he did not use the CRASH3 Program to perform his calculations. (D.E. 56 at PageID 451.)

6

(*Id.* at PageID 445.)  If Plaintiff had come to a complete stop and then rapidly accelerated, it would have taken her approximately 9.8 seconds to reach the area of impact, as opposed to the 4.48 to 4.68 seconds he calculated it took for her to reach that area without the stop.  (*Id.* at PageID 446.)  Thus, if Plaintiff had stopped at the stop sign, Goldsmith would have had 5.1 to 5.3 seconds longer to complete his maneuver and clear the intersection.  (Tr. Ex. 8.)

Plaintiff's expert, Aronberg, also testified at trial that he prepared a supplemental report because the analysis and calculations completed by Norris, along with the deposition transcripts of Deputies Ifantis and Stewart and Robin Garabedian "led [him] to additional opinions in this matter." (D.E. 56 at PageID 320–21.)  Aronberg first concluded that Norris was "clearly incorrect" as to the impact configuration of the vehicles.  (*Id.* at PageID 322.)  He maintained that Norris drew the collision as a 50 percent overlap collision, when it actually was a 100 percent overlap collision, as indicated by the full frontal damage across each vehicle.  (*Id.* at PageID 323–24.)  For the vehicles to have rotated to their positions at final rest, he found that Goldsmith's vehicle would have to have been traveling at 0 miles per hour "[o]r very close thereto."  (*Id.* at PageID 325, 367; Tr. Ex. 3.)  Aronberg further concluded that Norris "completely missed" the principal directions of force for both vehicles, violated Newton's Third Law of Motion, incorrectly calculated the speed of Watson's vehicle, incorrectly calculated the crush damage to the vehicles, and failed to "calculate the Force required to calculate the damage." (D.E. 56 at PageID 335–52 ; Tr. Ex. 3.)  Finally, Aronberg opined that Watson could not have avoided the collision and that Goldsmith's phone call resulted in distraction that contributed to his decision to cross the intersection "without taking proper notice of the approaching Honda." (D.E. 56 at PageID 356–58; Tr. Ex. 3.)

III.     CONCLUSIONS OF LAW

The Federal Tort Claims Act "grants a limited waiver of sovereign immunity and allows tort claims 'in the same manner and to the same extent as a private individual under like circumstances'" when the injury arises from the acts of a government employee "acting within the scope of his office or employment." *Young v. United States*, 71 F.3d 1238, 1241 (6th Cir. 1995) (quoting 28 U.S.C. § 2674); 28 U.S.C. § 2675. Liability is determined "in accordance with the law of the state where the event giving rise to liability occurred." *Young*, 71 F.3d at 1241 (citations omitted). The parties have stipulated that Goldsmith was acting under the scope of his federal employment at the time of the collision and as the collision took place in Tennessee, Tennessee's substantive law applied.

Under Tennessee law, "[t]o prevail on a negligence claim, a plaintiff must prove the following elements: 1) a duty of care owed by the defendant to the plaintiff; 2) conduct falling below the applicable standard of care amounting to a breach of that duty; 3) an injury or loss; 4) causation in fact; and 5) proximate, or legal, cause." *King v. Anderson Cnty.*, 419 S.W.3d 232, 246 (Tenn. 2013) (citing *Giggers v. Memphis Hous. Auth.*, 277 S.W. 3d 359, 364 (Tenn. 2009)). Duty "is the legal obligation . . . to conform to a reasonable person's standard of care in order to protect against unreasonable risks of harm." *Giggers*, 277 S.W. 3d at 364 (first citing *Burroughs v. Magee*, 118 S.W. 3d 323, 328–29 (Tenn. 2003); and then citing *McClung v. Delta Square Ltd. P'ship.*, 937 S.W. 2d 891, 894 (Tenn. 1996)). "The standard of conduct expected of a reasonable person may be prescribed in a statute and, consequently, a violation of the statute may be deemed to be negligence per se." *Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 937 (Tenn. 1994) (citing *McIntyre v. Balentine*, 833 S.W.2d 52, 59 (Tenn. 1992)). To establish negligence per se, "it must be shown that the statute violated was designed to impose a duty or

8

prohibit an act for the benefit of a person or the public. It must also be established that the injured party was within the class of persons that the statute was meant to protect." *Id.* (citations omitted).

Plaintiffs allege that Goldsmith violated a traffic ordinance of the city of Jackson, as well as two Tennessee statutes: Jackson City Ordinance § 15-403 (reckless driving); Tenn. Code Ann. § 55-8-136 (due care); and Tenn. Code Ann. § 55-10-205 (reckless driving). Asserting Watson's comparative negligence, Defendant contends that she violated each of the same provisions, as well as: Jackson City Ordinance § 15-705 (stop signs); Tenn. Code Ann. § 55-8-149 (stop signs); and Tenn. Code Ann. § 55-8-103 (penalty for violation of traffic laws)[6]. The parties have stipulated that Watson drove through the four-way stop at the intersection of Bells Highway and Old Bells Road without stopping. This action constituted a violation of both Tenn. Code Ann. § 55-8-149 and Jackson City Ordinance § 15-705.[7] As for Goldsmith, evidence at trial established that when he attempted his crossing, he was "in the process of ending" a phone call. (D.E. 57 at PageID 657.) Both experts agreed that cell phone use can be a distraction while driving, even if the driver operates the cell phone "hands-free." (D.E. 56 at PageID 356–58; 491.) The Court finds that Goldsmith's conduct was a distraction that contributed to his failure to maintain a proper lookout and failure to devote full time and attention to the vehicle, in violation of Tenn. Code Ann. § 55-8-136.

Having found breaches of duty by both Watson and Goldsmith, causation must be determined. "The cornerstone of cause-in-fact is the but-for test. The Court asks whether the

---

[6] This statute does not set out a specific duty of care, only the penalty for violation of other statutes within the section.

[7] Tenn. Code Ann. § 55-8-149 provides, in relevant part, that "[e]very driver of a vehicle . . . approaching a stop sign shall stop . . . at a clearly marked stop line." Jackson City Ordinance § 15-705 similarly provides that "every driver of a vehicle approaching a 'stop' intersection indicated by a 'stop' sign shall stop . . . at a clearly marked stop line."

injury would have occurred but-for [the party's] allegedly negligent conduct. A positive answer to that question means that there is no causation in fact." *Weems v. Omni Hotels Mgmt. Corp.*, 672 F. Supp. 3d 549, 556 (M.D. Tenn. 2023) (citation omitted) (applying Tennessee law). "In order to show causation in fact, '[i]t is not necessary that the defendants' act be the *sole* cause of the plaintiff's injury, only that it be *a* cause.'" *Lake v. Memphis Landsmen, LLC*, 405 S.W.3d 47, 67 (Tenn. 2013) (alteration and emphasis in original) (quoting *Wilson v. Americare Sys., Inc.,* 397 S.W.3d 552, 558 (Tenn. Feb. 25, 2013)). "The inquiry is not a metaphysical one, but rather a common sense analysis of the facts that lay persons can undertake as competently as the most experienced judges." *Waste Mgmt., Inc. of Tenn. v. S. Cent. Bell Tel. Co.*, 15 S.W.3d 425, 430 (Tenn. Ct. App. 1997) (citations omitted). The Court finds that Goldsmith's and Watson's actions were each causes-in-fact of Plaintiff's injuries. Goldsmith failed to maintain a proper lookout and attempted his crossing before the way was clear, and, thus, the collision resulted. Watson drove through the four-way stop in violation of the stop sign and, eyewitness testimony established that the collision occurred "almost immediately." (D.E. 57 at PageID 678.) Each breach of duty served as a but-for cause of the crash.

> For proximate cause, courts in Tennessee apply a three-part test:
>
> (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*Cotten v. Wilson*, 576 S.W.3d 626, 638 (Tenn. 2019) (quoting *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991)). Notably, Tennessee law recognizes that "[t]here can be more than one proximate cause of an injury. *Helderman v. Smolin*, 179 S.W.3d 493, 508 (Tenn. Ct. App. 2005) (quoting *Stokes v. Leung,* 651 S.W.2d 704, 708 (Tenn. Ct. App. 1982)). "There is no requirement

that a cause, to be regarded as the proximate cause of an injury, be the sole cause, the last act, or the one nearest to the injury, provided it is a substantial factor in producing the end result." *Id.* (quoting *McClenahan*, 806 S.W.2d at 775).

Goldsmith's conduct was a proximate cause of Watson's injuries. The agent crossing the highway when the highway was not, in fact, clear, was a substantial factor in bringing about her injuries. It is entirely foreseeable that failure to devote full time and attention to the operation of a vehicle and failure to maintain a proper lookout could result in the type of injuries sustained by Watson. Evidence was presented by Defendant's expert that at the moment Goldsmith began his maneuver, Watson's vehicle was likely within his line-of-sight. (D.E. 56 at PageID 444.) The expert's finding is bolstered by Goldsmith's own testimony that he saw "a blur" to his left before the impact. (D.E. 57 at PageID 633, 656.) The agent's duty to maintain a proper lookout did not end when he drove up to the edge of Bells Highway, looked both ways, thought the way was clear, and entered the highway. He was also required to maintain a proper lookout throughout his maneuver but failed to do so. *Harris v. Miller*, 144 S.W.2d 7, 9 (Tenn. Ct. App. 1940) ("It is the duty of the driver of an automobile to keep a diligent lookout ahead and to see all that comes within the radius of his line of vision, both in front and to the side.").

Watson's act of traveling through the intersection of Bells Highway and Old Bells Road without stopping at the stop sign was likewise a proximate cause of the collision. Eyewitness Dan Long testified at trial that he heard the impact "almost immediately" after Mrs. Watson passed through the intersection. (D.E. 57 at PageID 678.) Moreover, Defendant's expert determined that had Watson stopped and then rapidly accelerated, it would still have taken her approximately 9.8 seconds to reach the area of impact. (D.E. 56 at PageID 446.) If the accident had not occurred, Goldsmith would have cleared Bells Highway in approximately 5.7 seconds. (*Id.* at PageID 443.)

Norris determined that Watson reached the area of impact from the stop bar in approximately 4.48 to 4.68 seconds. (*Id.* at PageID 446; Tr. Ex. 8.) At the time she reached the area, Goldsmith needed another 1.92 seconds to complete his crossing. (*Id.* at PageID 443.) Thus, Defendant's expert concluded that if Watson had stopped at the stop sign, "[t]he collision would not have occurred. Because the timing of that scenario would be completely different." (D.E. 56 at PageID 445.)

The Court assigns little weight to the opinion of Plaintiff's reconstructionist, Aronberg, that, due to the distance from the missed stop sign to the area of impact, Watson's negligence was not a cause of the accident. He submitted in his initial report, and at trial, that Watson was traveling below 45 miles per hour at the time of the collision. (D.E. 56 at PageID 361–62; Tr. Ex. 2.) He relied on the damage photos and his experience to reach this conclusion but performed no calculations. (D.E. 56 at PageID 361–62; Tr. Ex. 2.) In his supplemental report, Aronberg stated that Norris's calculations were incorrect and that Watson was in fact traveling approximately 36 miles per hour. (Tr. Ex. 3.) This calculation conflicts with eyewitness testimony from both Watson and Long. Plaintiff recalled that she passed through the intersection traveling "[p]robably about 45" (D.E. 57 at PageID 598) while Long estimated her speed at that point to be between 40 and 50 miles per hour (*Id.* at PageID 676).

The Court finds Norris's conclusion comports more closely with the eyewitness testimony of Long. Norris calculated that Watson was traveling between 51 and 54 miles per hour at the time of the collision. The upper end of Long's estimation was that she was driving 50 miles per hour as she proceeded through the intersection. It is further foreseeable that the act of failing to stop at a stop sign as required by law could result in the kind of injuries suffered by Watson. The

12

Court thus determines that Watson's negligent act of traveling through the intersection of Bells Highway and Old Bells Road without stopping was also a proximate cause of her injuries.

Because the actions of Watson and Goldsmith each proximately caused Watson's injuries, the Court must apportion fault accordingly. In *McIntyre v. Balentine*, the Tennessee Supreme Court held that if a Plaintiff's own negligence is equal to or greater than that of Defendant, then she cannot recover. 833 S.W.2d 52, 57 (Tenn. 1992); *see also Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994). Courts apportioning fault may consider the following factors:

> (1) the relative closeness of the causal relationship between the conduct of the defendant and the injury to the plaintiff; (2) the reasonableness of the party's conduct in confronting a risk, such as whether the party knew of the risk, or should have known of it; (3) the extent to which the defendant failed to reasonably utilize an existing opportunity to avoid the injury to the plaintiff; (4) the existence of a sudden emergency requiring a hasty decision; (5) the significance of what the party was attempting to accomplish by the conduct, such as an attempt to save another's life; and (6) the party's particular capacities, such as age, maturity, training, education, and so forth.

*Eaton*, 891 S.W.2d at 592. "The foregoing is, however, not an exclusive list and fact finders are directed 'to rely upon their common sense and ordinary experience in apportioning fault.'" *Guthrie v. United States*, 1:22-CV-00162-DCLC-MJD, 2025 WL 968402, at *3 (E.D. Tenn. Mar. 31, 2025). Based on the above factors and the circumstances of the collision as a whole, the Court finds that the parties were equally at fault. Goldsmith entered the intersection into the path of travel of Watson resulting in the collision. As for Watson, she traveled through a nearby stop sign without ever stopping (or slowing down), and, had she earlier stopped, eyewitness and expert testimony established that the accident would not have happened. Watson should have known of the potential risk of an accident occurring if she failed to stop. Neither party conformed to their required duties of care and the collision resulted. Both parties were equally at fault, and, thus, Plaintiffs cannot recover.

IV.     CONCLUSION

For the reasons stated above, Plaintiffs are barred from recovery under Tennessee's system of comparative fault. Accordingly, this action is DISMISSED and the Clerk is DIRECTED to enter judgment for Defendant.

IT IS SO ORDERED this 27th day of June 2025.

s/ J. DANIEL BREEN<br>UNITED STATES DISTRICT JUDGE